UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARBOR HOME, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>Defendants. | Case No. 21-cv-03737-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF Nos. 33, 37] |

This case concerns the denial of Plaintiff Arbor Home, LLC's Form I-129 Petition to classify its Chief Executive Officer Farshad Taheri as an O-1A nonimmigrant of extraordinary ability and the corresponding denial of Taheri's spouse's petition for reclassification. Both Arbor Home and the Government have filed motions for summary judgment. *See* ECF Nos. 33 ("PMSJ"), 37 ("GMSJ"), 39 ("PReply"), 40 ("GReply"). The Court held a hearing on the matter on April 21, 2022. For the reasons stated on the record and explained below, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

**I.   LEGAL FRAMEWORK**

Because the legal framework that governs adjudication of Plaintiffs' immigration petitions is critical to the Court's decision and informs discussion of the factual background in this case, the Court begins there.

The Immigration and Nationality Act ("INA") and relevant regulations provide for visas for individuals who can demonstrate "extraordinary ability in the sciences, arts, education, business or athletics" which allow them to enter the United States to work in their area of

1   extraordinary ability.  8 U.S.C. § 1153(b)(1)(A); 8 C.F.R. § 204.5(h).  There are generally two
2   types of such visas:  temporary, non-immigrant visas ("O" visas); and permanent, immigrant visas
3   ("EB" visas).
4         Employers file petitions for O-1 visas for their employees through Form I-129; employees
5   themselves cannot self-petition for O-1 visas.  8 C.F.R. § 214.2(O)(2)(i).  An applicant's employee
6   is entitled to an O-1 visa if she demonstrates "extraordinary ability in the sciences, arts, education,
7   business, or athletics which has been demonstrated by sustained national or international acclaim
8   and who is coming temporarily to the United States to continue work in the area of extraordinary
9   ability." *Id.* § 214.2(O)(1)(ii)(A)(1).  "Extraordinary ability" is "a level of expertise indicating that
10  the individual is one of that small percentage who have risen to the very top of the field of
11  endeavor." *Id.* § 204.5(h)(2).  This case concerns a dispute over an O-1 visa.
12        An individual can self-petition for an EB-1 visa through a Form I-140 if she has
13  "extraordinary ability in the sciences, arts, education, business, or athletics, which has been
14  demonstrated by sustained national or international acclaim" and her "achievements have been
15  recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A)(i).  An EB-1
16  applicant must show, as with an O-1 applicant, that she is trying to enter the United States to
17  "continue work in the area of extraordinary ability." *Id.* § 1153(b)(1)(A).  The EB-1 petitioner
18  must separately show that her "entry into the United States will substantially benefit prospectively
19  the United States." *Id.*  If an individual's I-140 is approved and she obtains an EB-1 visa, she (and
20  her spouse and minor children) may subsequently seek lawful permanent resident status
21  (commonly known as a "green card") through Form I-485.
22        Adjudication of applications for "extraordinary ability" visas occurs through a two-step
23  process.  *See Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010).
24  First, the Government determines if the petitioner has, by a preponderance of the evidence,
25  provided either (1) evidence of a one-time achievement (like a Nobel Prize or Olympic gold
26  medal), or (2) evidence satisfying a certain number of regulatory criteria.  For petitions for O-1
27  visas like the one at issue here, an applicant must satisfy three of the following eight criteria:
28        (1)    Documentation of the alien's receipt of nationally or

>internationally recognized prizes or awards for excellence in the field of endeavor;
>
>(2) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
>(3) Published material in professional or major trade publications or major media about the alien, relating to the alien's work in the field for which classification is sought, which shall include the title, date, and author of such published material, and any necessary translation;
>
>(4) Evidence of the alien's participation on a panel, or individually, as a judge of the work of others in the same or in an allied field of specialization to that for which classification is sought;
>
>(5) Evidence of the alien's original scientific, scholarly, or business-related contributions of major significance in the field;
>
>(6) Evidence of the alien's authorship of scholarly articles in the field, in professional journals, or other major media;
>
>(7) Evidence that the alien has been employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation;
>
>(8) Evidence that the alien has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence.

8 C.F.R. § 214.2(o)(3)(B)(1)–(8). If the criteria "do not readily apply to the beneficiary's occupation," she "may submit comparable evidence" of eligibility. *Id.* § 214.2(o)(3)(C); *Donskoy v. U.S. Citizenship & Immigration Servs.*, 2021 WL 5240224, at *2 (N.D. Cal. Nov. 11, 2021). If the applicant satisfies this first step, she has met an initial evidentiary burden for eligibility for extraordinary ability classification. *Donskoy*, 2021 WL 5240224, at *2; *Kazarian*, 596 F.3d at 1119–20.

Second, if an applicant satisfies the initial step of the inquiry, the Government at step two then conducts a "final merits determination," weighing the evidence submitted to determine whether it demonstrates extraordinary ability. *Kazarian*, 596 F.3d at 1119–20; *Donskoy*, 2021 WL 5240224, at *2. The Government must evaluate whether the applicant is someone "who has extraordinary ability in the sciences, arts, education, business, or athletics," 8 C.F.R. § 214.2(o)(1)(i), and whether she is "one of the small percentage who have arisen to the very top of [her] field of endeavor," *id.* § 214.2(o)(3)(ii). These regulatory criteria have been described as

3

"extremely restrictive." *Kazarian*, 596 F.3d at 1120 (quoting *Lee v. Ziglar*, 237 F. Supp. 3d 914, 918 (N.D. Ill. 2002)).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Arbor Home is a smart home product design and development company that was founded in 2016 and, at the time of the decisions relevant to this case, employed two individuals. AR3.[1] Arbor Home sought to employ Mr. Taheri, its founder and an Iranian national, as its Chief Executive Officer for a period of three years at a salary of $60,000 per year. *Id.* On April 15, 2020, Arbor Home filed a Form I-129 on behalf of Mr. Taheri seeking to continue to employ him as CEO in O-1A status. AR52–64. That petition argued that Mr. Taheri was an alien of extraordinary ability in the field of business "as an executive, entrepreneur, and innovator in the smart home and home improvement product and development sectors." AR67. Arbor Home submitted evidence in support of its argument that Mr. Taheri satisfied seven of the eight merits criteria. AR69–121. On October 22, 2020, U.S. Customs and Immigration Services ("USCIS") issued a Request for Evidence to Arbor Home, saying that Mr. Taheri did not satisfy any of the criteria and seeking additional evidence supporting Arbor Home's assertions. AR419–33. Arbor Home responded with additional evidence. AR434–1109.

On April 1, 2021, USCIS denied the petition. AR19–31. The decision stated that Mr. Taheri satisfied only two of the eight criteria, one fewer than was necessary to satisfy the first step of the inquiry. AR23 ("Published Material" and "Judging the Work of Others"). USCIS rejected Arbor Home's arguments that Mr. Taheri met seven of the other criteria. AR22–30. Because USCIS found that Mr. Taheri did not meet at least three of the criteria, it did not proceed to the final merits determination. AR30.

On May 18, 2021, Arbor Home and Mr. Taheri filed their complaint and, a week later, a motion for a temporary restraining order. *See* ECF Nos. 1, 9. After conferring, the parties stipulated to USCIS vacating the denial of the petition and reopening Arbor Home's O-1A petition. ECF No. 18. USCIS reopened the matter on June 1, 2021, AR18, and six days later

---
[1] Citations to the administrative record, ECF No. 31 ("AR"), will refer to the page numbers in the lower right corner of the document.

4

issued a Notice of Intent to Deny ("NOID") on June 7, 2021, AR1110–20. The NOID stated that USCIS determined that Mr. Taheri satisfied three of the regulatory criteria as required, but that USCIS intended to deny the petition at the final merits determination. AR1112–113. In USCIS's view, the petition did not demonstrate that Mr. Taheri "has enjoyed sustained national or international acclaim and is one of the top few percent of his . . . field of endeavor." *Id.* Arbor Home responded to the NOID with additional argument and evidence, AR1122–1450, but USCIS denied the petition on August 4, 2021 on the final merits determination. AR1–17.

Plaintiffs filed an amended complaint on September 13, 2021 challenging the August 2021 denial. ECF No. 25. Plaintiffs then moved for preliminary relief, but the Court struck the motions twice as not complying with the Civil Local Rules and this Court's standing order. ECF Nos. 23, 24, 26, 27. The Government answered on September 24, 2021. ECF No. 28. Now before the Court are the parties' cross-motions for summary judgment. *See* PMSJ, GMSJ.

### III.    LEGAL STANDARD

Summary judgment is the "appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts it did" because in reviewing an agency's final action under the Administrative Procedure Act, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985). Instead, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision that it did." *Id.*

In reviewing final agency action under the Administrative Procedure Act, the court must uphold the agency's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A "court simply ensures that the agency has acted within a zone of reasonableness." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The court does not "substitute its judgment for that of the agency" and instead only "consider[s] whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Arbitrary and capricious review is "highly deferential, presume[s] the agency action to be valid and requires affirming the agency action if a

5

reasonable basis exists for the decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). A reviewing court thus "uphold[s] the [agency's] findings unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003).

## IV. DISCUSSION

Both parties have moved for summary judgment. *See* PMSJ, DMSJ. In their motion for summary judgment, Plaintiffs attack the Government's denial of their O-1 petition on several grounds. In its motion for summary judgment, the Government responds to Plaintiffs' arguments and defends its decision to deny the petition. The Court addresses Plaintiffs' arguments against the decision because in the absence of finding that Plaintiffs have shown that the Government's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), the Government is entitled to summary judgment. *See Tandel v. Holder*, 2009 WL 2871126, at *5 (N.D. Cal. Sep. 1, 2009) (granting Government's motion for summary judgment and denying plaintiffs' motion for summary judgment after adjudicating plaintiffs' arguments that visa revocation violated APA).

### A. First Denial

First, Plaintiffs spend over half their motion arguing that the Government erred by denying Plaintiff's original O-1A petition for failing to satisfy at least three of the eight criteria. *See* PMSJ at 9–16. Plaintiffs argue that the Government should have found that Mr. Taheri met four of the regulatory criteria, and that some of Mr. Taheri's evidence should have been considered under the "comparable evidence" standard. *Id.* The Government argues that the initial denial of the petition is not at issue because USCIS voluntarily reopened the petition after Plaintiffs filed this lawsuit and issued a new NOID and denial on a different basis. *See* GMSJ at 11–13. In reply, Plaintiffs clarify that the Court should consider the first denial as "context in order to understand the steps the Government has taken in their overall analysis of the petition filed by Plaintiffs." *See* PReply at 5–14. The Government contends that any Court statements regarding the first denial would be an advisory opinion on an agency decision that is no longer effective, and that agencies are allowed to correct earlier mistakes with new decisions that make earlier decisions irrelevant. *See*

GReply at 5–9.

       The Court largely agrees with the Government. The Court is empowered to review only final agency action, not any "preliminary or procedural steps" taken by an agency. *Western Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1996 (9th Cir. 1997); *see also Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) ("final agency action" is the "consummation of the agency's decisionmaking process" from which "legal consequences will flow"). Here, USCIS's voluntary reopening of the petition and subsequent issuance of a new NOID and denial with different reasoning effectively nullified the earlier NOID and denial. USCIS evidently concluded that the basis of the earlier denial, while challengeable final agency action at the time it was made, was erroneous. It contends that the error was corrected when the petition was denied for different reasons, which are now subject to the Court's review. USCIS is allowed to correct what it perceives to be errors and perform a new examination of a petition (even in cases where the new decision reverses a previously *favorable* decision, which is not the case here but is even less favorable to the applicant). *See Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 244–45 (D.D.C. 2015) (upholding "denial of the latest O-1 petition" notwithstanding "earlier, favorable adjudications of the plaintiff's O-1 [p]etitions"); *Texas A & M Univ.-Corpus Cristi v. Upchurch*, 2003 WL 21955866, at *2 (N.D. Tex. Jul. 8, 2003) ("The fact that [the beneficiary], in his first O-1 visa application, was the fortunate beneficiary of a more lenient adjudication under [the regulations] does not prevent the defendants from correcting that previous error."), *aff'd*, 99 F. App'x 556 (5th Cir. 2004). Indeed, Plaintiffs' arguments about allegedly erroneous analysis in the first adjudication are puzzling given that the agency reversed itself on some of those criteria in the second adjudication. *See Berardo v. U.S. Citizenship & Immigration Servs.*, 2020 WL 6161459, at *3 n.4 (D. Or. Oct. 20, 2020) ("The Court does not address [the plaintiff's] arguments that [USCIS] erred by failing to attribute certain evidence to the four threshold criteria that [USCIS] had concluded he had met, as any error in [USCIS's] evaluation of that evidence at the first step of its analysis is harmless based on [USCIS's] conclusion that [the plaintiff] satisfied those threshold criteria."); *cf. Soni v. United States*, 2016 WL 4154137, at *4 (D.N.J. Aug. 2, 2016) (argument that USCIS erred when "[i]t did not consider review of one article sufficient to meet the fourth

7

1  criterion" was "irrelevant" because USCIS ultimately determined that fourth criterion was met).

2  The first denial is accordingly not under review in this case, and the Court need not
3  scrutinize the analysis that USCIS made for individual criterion in the first decision.  The Court
4  will only consider the first analysis to the extent it provides factual background and context for the
5  second adjudication.

### B.    Evidentiary Standard

7  Plaintiffs next argue that the Government imposed "an impermissibly high burden of
8  proof" that "well-exceeds" the appropriate preponderance of the evidence standard under the
9  regulations.  *See, e.g.*, PMSJ at 4, 7–9; PReply at 3–5.  The Government responds that USCIS
10 properly applied the preponderance of evidence standard, as is evident by proper articulation of
11 the standard in the NOID and decision.  *See* GMSJ at 9–11; GReply at 3–5.

12 The Court finds that the Government identified and applied the correct evidentiary
13 standard.  The Government takes no issue with Plaintiffs' articulation of the standard.  *See* PMSJ
14 at 7–9.  But contrary to Plaintiffs' position, both the NOID and final decision cite that standard,
15 and the final decision cites the same case on which Plaintiffs rely for their explanation of the
16 standard.  *See* AR1110 (NOID: "Pursuant to the preponderance of the evidence standard, [USCIS]
17 will examine each piece of evidence for relevance, probative value, and credibility . . . ."); AR3
18 (final decision:  "You have the burden of establishing eligibility for the benefit sought by a
19 preponderance of the evidence.") (citing *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO
20 2010)).  There is no evidence that the agency, despite articulating the proper burden of proof, in
21 fact held Plaintiffs to a higher burden of proof.  To the extent Plaintiffs argue that the Court must
22 itself examine the evidence pursuant to the preponderance of the evidence standard, that argument
23 misconstrues the scope of the Court's review.  The Court will not "substitute its judgment for that
24 of the agency" and instead only "consider[s] whether the decision was based on a consideration of
25 the relevant factors and whether there was a clear error of judgment."  *Citizens to Preserve*
26 *Overton Park, Inc.*, 401 U.S. at 416; *see also* 5 U.S.C. § 706(2)(A) (agency decision upheld unless
27 it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law").
28 The Court conducts that analysis on the merits below after considering one last threshold issue.

**C.     Framework for USCIS's Analysis**

The parties' final threshold dispute concerns the legal framework that USCIS applies to adjudicate petitions for O-1 visas. It is undisputed that, in this case, USCIS applied the two-step framework articulated in *Kazarian v. United States Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010),[2] to the petition. Plaintiffs contend that the *Kazarian* framework does not apply to O-1 visa petitions because that case instead concerned the related but distinct Forms I-140 for EB visas, not O visas. PMSJ at 17–18. Plaintiffs thus appear to argue by implication that because USCIS found that Mr. Taheri met three of the regulatory criteria, his petition should be granted. *Id.* The Government argues that *Kazarian* controls and that, even if *Kazarian* did not involve the specific type of extraordinary ability visa at issue here, the agency is entitled to *Chevron* deference for applying that interpretation of its own regulations. GMSJ at 13–16.

It is true that *Kazarian* did not involve a petition for O-1 visas, and instead involved a different type of petition for an extraordinary ability visa. *See Kazarian*, 596 F.3d at 1117 (explaining the Form I-140). But Plaintiffs have cited no case declining to apply *Kazarian* to a petition for an O-1 visa on the grounds that *Kazarian* involved a different type of extraordinary ability visa. Indeed, as the Court recounted above, the two types of extraordinary ability visas are subject to similar statutory and regulatory regimes. *See supra* Section I. As the Government states, the two-step framework makes a distinction between (1) providing evidence to meet a certain number of delineated criteria, and (2) eligibility for classification as an alien of extraordinary ability. *See Mott Thoroughbred*, 87 F. Supp. 3d at 249; *see also Amin v. Mayorkas*, 24 F.4th 383, 390–92 (5th Cir. 2022) (approving two-step adjudication of extraordinary ability visa based on *Kazarian* because "[t]he regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa"). The Court finds that, in the absence of authority to the contrary, *Kazarian* provides the proper framework for analyzing petitions for O-1 visas, given the similar statutory and regulatory schemes at issue.[3] *See Mishra v. Richardson*, 2021 WL

---

[2] The Court previously described the *Kazarian* framework in Section I, *supra*.
[3] The Court thus need not reach the Government's argument regarding *Chevron* deference, to which Plaintiffs do not respond.

1566071, at *1 n.1 (E.D. Va. Apr. 20, 2021) (noting that USCIS had adopted the two-step *Kazarian* framework for all extraordinary ability petitions). Given that *Kazarian* applies, Plaintiffs implicit argument that providing evidence for three of the eight regulatory criteria is sufficient for the O-1 visa to issue is incorrect. *See Kazarian*, 596 F.3d at 1121 (analysis of substance of evidence relevant to "final merits determination" but not to "antecedent procedural question of whether petitioner has provided at least three types of evidence").

### D. Second Denial

Now that the Court has adjudicated the initial procedural disputes, it turns to the merits. At issue is whether USCIS acted arbitrarily, capriciously, or unlawfully in denying the petition. 5 U.S.C. § 706(2)(A). The Court finds that it did not.

As is evident from the second denial letter, USCIS had determined at step one that Mr. Taheri "ha[d] satisfied at least three of the eight evidentiary criteria:" criteria three, four, and eight. AR4. Because the agency determined that Mr. Taheri had satisfied step one of the analysis, USCIS proceeded to step two of the *Kazarian* analysis: the "final merits determination," or the "totality of the evidence" analysis. *Kazarian*, 596 F.3d at 1119–20; *accord* AR4. Because it is at this step that USCIS determined Mr. Taheri had not satisfied the regulatory criteria, it is here that the Court focuses its analysis. To reiterate, at step two the Government must evaluate whether the applicant is someone "who has extraordinary ability in the sciences, arts, education, business, or athletics," 8 C.F.R. § 214.2(o)(1)(i), and whether he is "one of the small percentage who have arisen to the very top of his field of endeavor," *id.* § 214.2(o)(3)(ii).

Aside from their threshold arguments about the applicable legal framework that the Court has already evaluated, Plaintiffs lodge no specific objections to USCIS's analysis at step two in the denial notice. Plaintiffs instead make general complaints about the second denial,[4] saying that USCIS "clearly failed to articulate detailed reasons for ignoring the evidence submitted in response to the NOID," "use[d] repetitive and generic language throughout the denial," and

---

[4] Plaintiffs extensively discuss evidence submitted for certain criteria for the first denial. *See* PMSJ at 7–16. As the Court has already explained, however, the first denial is no longer at issue. The Court accordingly need not—indeed, cannot—review the agency's evaluation of the evidence in that context.

"simply drew conclusions without any foundation." PMSJ at 18–19. At that level of generality, the Court disagrees. Examination of the denial letter illustrates that USCIS exhaustively reviewed the evidence Plaintiffs submitted in response to the NOID, responded to Plaintiffs' counsel's arguments, and explained why that evidence did not alter the agency's conclusion from the NOID.

The only arguably specific objection Plaintiffs make is to a statement in the NOID regarding Mr. Taheri's receipt of an award in a national industrial design competition in Iran ("IDIRAN"). *See* PMSJ at 19–20. As the Government notes, Plaintiffs' objection is to a statement in the NOID rather than the final decision, and the agency's statement in the NOID is not repeated in the final denial. *Accord* GMSJ at 17. Nevertheless, the denial's discussion of the IDIRAN on different grounds is a good example of how the agency thoroughly examined Plaintiffs' proffered evidence at step two and found that it was insufficient to meet the "extremely restrictive" requirements for this type of visa. *Kazarian*, 596 F.3d at 1120 (quoting *Lee*, 237 F. Supp. 3d at 918). USCIS noted Plaintiffs' submission of three pieces of evidence for criterion (1) – "documentation of the alien's receipt of nationally or internationally recognized prizes or awards for excellence in the field of endeavor"—including the IDIRAN award. AR6. For the IDIRAN award, the agency excerpted Plaintiffs' attorney's argument, which contended that the record "has demonstrated that this award is currently the most important design and innovation competition in Iran" that "has been ongoing since Mr. Taheri's company won the first competition in 2017." *Id.* The agency also acknowledged the receipt of a translated letter from IDIRAN regarding the award, a printout indicating that winners of the competition were shown at international assemblies, and photographs of awards. *Id.* In response, the agency stated that the record "lacks sufficient documentation detailing the significance and importance of [the IDIRAN] competition nationally or internationally." *Id.* The agency noted that although the printout stated that winners would be shown at international assemblies, there was no evidence in the record that Mr. Taheri's company or product did actually exhibit at international assemblies. *Id.* As to the photographs, the agency found that there was insufficient "explanation of the requirements, qualifications, or competitions for which they were awarded." *Id.* Accordingly, the agency "consider[ed] the design competition victory in assessing [Mr. Taheri's] ability" but found that "the lack of context

11

regarding the significance of this award limits its probative value." *Id.* The Court cannot say that the analysis of this factor—which is representative of the analysis of other factors, in the absence of specific objections from Plaintiffs—was arbitrary and capricious. The agency considered the evidence Plaintiffs submitted regarding IDIRAN, evaluated that evidence, explained some of the deficiencies it found, and then assigned it some but "limited" probative value given those deficiencies. That evidence would not "compel a reasonable finder of fact to reach a contrary result," *Monjaraz-Munoz*, 327 F.3d at 895, so the agency's decision on this factor must stand. Plaintiffs have pointed to no evidence suggesting otherwise.

Plaintiffs cite *Berardo* as a "strikingly similar" case, *see* PReply at 6–7, but that case is distinguishable. In *Berardo*, USCIS initially denied a petition for failure to satisfy any of the criteria at step one of the *Kazarian* analysis, but after the plaintiff filed suit, the agency reopened the petition, issued a notice of intent to deny at step two of the *Kazarian* analysis, and ultimately denied the petition on that basis after considering the plaintiff's supplementary evidence. *See Berardo*, 2020 WL 6161459, at *2–3. The Court granted Plaintiffs' motion for summary judgment and denied the Government's motion because the agency had failed to consider certain evidence that Berardo submitted in support of certain criteria in the final merits analysis. *See id.* at *10 (USCIS "abused its discretion by failing to consider [evidence in support of two] criteria in its final merits determination"). Although the procedural history of *Berardo* is similar to the procedural history of this case, that is where the similarities stop. Plaintiffs have cited to no evidence that the agency failed to consider in the final merits determination in the second decision. Indeed, in the second denial letter, the agency considered the supplemental evidence Plaintiffs submitted, responded to Plaintiffs' attorney's arguments, and explained why the supplemental evidence did not satisfy the restrictive criteria to issue the visa.

Without specific objections to the agency's statements in the second denial, the Court need not go further. As the agency's consideration of the IDIRAN award illustrates, the agency carefully considered the evidence Plaintiffs submitted and the arguments their attorneys made and explained what probative value (if any) it was assigning to that evidence, ultimately concluding that Mr. Taheri did not pass the final merits determination at step two of the *Kazarian* analysis and

12

so denied Plaintiffs' petition.  The denial was not arbitrary and capricious, and so the Government is entitled to summary judgment.

**V. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. Judgment will issue.

Dated:  May 23, 2022

_____
BETH LABSON FREEMAN
United States District Judge

13